**LYNCH CARPENTER, LLP**
Todd D. Carpenter (SBN 234464)
todd@lcllp.com
1350 Columbia St., Ste. 603
San Diego, California 92101
Tel.:   (619) 762-1900
Fax:   (619) 756-6991

*Attorneys for Plaintiff and the Proposed Class*

[Additional counsel listed on signature page.]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOROTHY TEIXEIRA, individually and on behalf of all others similarly situated,<br><br>           Plaintiff,<br><br>      v.<br><br>APPLE INC.,<br><br>           Defendant. | Case No.  5:23-cv-617<br><br>**JURY DEMAND**<br><br>**CLASS ACTION COMPLAINT** |

CLASS ACTION COMPLAINT

Plaintiff Dorothy Teixeira ("Plaintiff"), on behalf of herself and all others similarly situated, brings this action against Defendant Apple Inc. ("Apple" or "Defendant") and alleges, based upon personal knowledge as to herself and her own actions, and upon information and belief, including the investigation of counsel, as follows:

**NATURE OF THE ACTION**

1. This is a proposed class action brought against Apple for wiretapping the electronic communications of Apple mobile device users who interact with Apple's proprietary applications ("apps")—including the App Store, Apple Music, Apple TV, Books, and Stocks—on their mobile Apple devices.

2. In contradiction of Apple's privacy promises, Apple tracks and collects large swaths of personal information from mobile device users while they use Apple apps, regardless of device users' privacy settings, including details about device users' app usage, app browsing communications, personal information, as well as information relating to the mobile device itself (collectively, "User Data").

3. Apple's conduct violates the California Invasion of Privacy Act, Cal. Penal Code § 630, *et. seq.* ("CIPA") and constitutes an invasion of the privacy rights of mobile Apple device users.

4. Plaintiff brings this action individually and on behalf of a class of all individuals whose User Data was tracked and collected by Apple, without their consent, and seeks all civil remedies provided under the causes of action, including but not limited to compensatory, statutory, and/or punitive damages, and attorneys' fees and costs.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because the amount in controversy for the Class exceeds $5,000,000 exclusive of interest and costs, there are more than 100 putative Class members defined below, and minimal diversity exists because a significant portion of putative Class members are citizens of a state different from the citizenship of Defendant.

6. This Court has personal jurisdiction over the Defendant because Defendant maintains its principal place of business in this District and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District and because Defendant maintains its principal place of business in this District.

**PARTIES**

8. Plaintiff Dorothy Teixeira is a citizen of the state of California who resides in Long Beach, California. Plaintiff owns an iPhone and regularly uses it to access Apple apps, including but not limited to Apple's App Store and Apple Music. Shortly after purchasing her iPhone, Plaintiff turned off the "Allow Apps to Request to Track" and the "Share iPhone Analytics" options. Even though Plaintiff turned these features off, Apple has nonetheless accessed, collected, and tracked Plaintiff's User Data without her consent.

9. Defendant Apple Inc. is an American multinational technology company incorporated in California with a principal place of business located at One Apple Park Way, Cupertino, California 95014. Among Apple's flagship items of consumer mobile electronic devices are the iPhone and iPad, and Apple generally oversees all aspects of these devices, including but not limited to their design, manufacture, marketing, and technical support and maintenance.

**FACTUAL ALLEGATIONS**

10. Apple is the world's largest technology company with sales of $378.7 billion in 2022 and a market capitalization of $2.6 trillion.[1]

11. Apple manufactures and produces some of the most popular mobile electronic devices in the world, including the iPhone and the iPad.

12. The iPhone is Apple's line of smartphones and is one of the two largest smartphone platforms in the world alongside Android.

---

[1] Jonathan Ponciano, *The World's Largest Tech Companies in 2022: Apple Still Dominates As Brutal Market Selloff Wipes Trillions In Market Value*, Forbes (May 12, 2022), https://www.forbes.com/sites/jonathanponciano/2022/05/12/the-worlds-largest-technology-companies-in-2022-apple-still-dominates-as-brutal-market-selloff-wipes-trillions-in-market-value/?sh=11abfd2a3448.

13. As of 2022, the iPhone leads the smartphone market worldwide, with a market share of 28.43 percent.[2] There are more than 1.2 billion iPhone users in the world.[3]

14. The iPhone is Apple's most valuable product, credited with helping to make Apple one of the world's most valuable companies, as the iPhone is responsible for 50 percent of Apple's revenue.[4]

15. The iPad is Apple's line of tablet computer devices.

16. As of September 2020, Apple has sold more than 500 million iPads[5] and the iPad is one of the most popular tablet computer devices.[6]

17. Both the iPhone and the iPad come preloaded with Apple's propriety apps, including the App Store, Apple Music, Apple TV, Books, and Stocks.

**A.  Apple's Purported Privacy Promises to its Mobile Device Users.**

18. Over the years, Apple has promoted itself as privacy champion of consumers in an attempt to set it aside from its competitors.

19. In a 2015 interview with National Public Radio, Apple's Chief Executive Officer, Tim Cook, emphasized Apple's purported commitment to consumer privacy: "We see that privacy is a fundamental human right that people have. We are going to do everything that we can to help maintain that trust . . . ."[7]

---

[2] *Smartphone Market Share Worldwide*, Oberlo, https://www.oberlo.com/statistics/smartphone-market-share#:~:text=The%20latest%20statistics%20on%20the,worldwide%20use%20an%20Apple%20phone (last visited Jan. 18, 2023).

[3] Daniel Ruby, *iPhone User Statistics*, DemandSage (Oct. 14, 2022), https://www.demandsage.com/iphone-user-statistics/#:~:text=There%20are%20more%20than%201.2,million%20iPhones%20in%202021%20alone.

[4] David Curry, *Apple Statistics (2023)*, Business of Apps (Jan. 11, 2023), https://www.businessofapps.com/data/apple-statistics/#:~:text=iPhone%20is%20Apple's%20most%20valuable,for%2050%25%20of%20its%20revenue.

[5] Mike Peterson, *Apple has sold a total of 500 million iPads in the last 10 years*, Apple Insider (Sept. 15, 2020), https://appleinsider.com/articles/20/09/15/apple-has-sold-a-total-of-500-million-ipads-in-the-last-10-years.

[6] Michael Potuck, *Latest data suggest iPad sales hit highest growth rate in 6 years during Q2*, 9to5Mac (Aug. 5, 2020), https://9to5mac.com/2020/08/05/latest-data-suggests-ipad-sales-hit-highest-growth-rate-in-6-years-during-q2/.

[7] *Apple CEO Tim Cook: 'Privacy Is A Fundamental Human Right'*, NPR (Oct. 1, 2015), https://www.npr.org/sections/alltechconsidered/2015/10/01/445026470/apple-ceo-tim-cook-privacy-is-a-fundamental-human-right.

20. In 2019, Apple ran an ad campaign, purportedly reiterating the company's stance on user privacy protections.[8] "It emblazoned 40-foot billboards of the iPhone with the simple slogan 'Privacy. That's iPhone.' and ran the ads across the world for months."[9]

21. More recently in 2022, Mr. Cook doubled down on Apple's purported commitment to consumer privacy, tweeting "Privacy is a fundamental right and we build it into all products and services at Apple. You should be in control of your data--- not the highest bidder" in conjunction with a short video that ends with a message "It's your data. iPhone helps keep it that way" and states "Privacy. That's iPhone."[10]

22. Consistent with Apple's purported privacy commitments, Apple purports to offer its mobile device users the option to control what app browsing activity data Apple and other third-party app developers can collect by adjusting their device's privacy settings. For instance, Apple offers device users "App Tracking Transparency" which allows device users "to choose whether an app can track your activity across other companies' apps and websites for the purposes of advertising or sharing with data brokers."[11] By turning off "Allow Apps to Request to Track" in their device settings, Apple assures its device users that apps "can't access the system advertising identifier (IDFA), which is often used to track" and are "not permitted to track your activity using other information that identifies you or your device, like your email address."[12]

23. Further, Apple's "Share iPhone Analytics," "Share iPhone & Watch Analytics," and "Share iPad Analytics," (collective "Share [Device] Analytics") privacy settings make an explicit promise to "disable the sharing of Device Analytics altogether" when switched off.[13]

---

[8] Mike Wuerthele, *'Privacy. That's iPhone' ad campaign launches, highlights Apple's stance on user protection*, Apple Insider (Mar. 14, 2019), https://appleinsider.com/articles/19/03/14/privacy-thats-iphone-ad-campaign-launches-highlights-apples-stance-on-user-protection.
[9] Thomas Germain, *Apple Is Tracking You Even When its Own Privacy Settings Say It's Not, New Research Says*, Gizmodo (Nov. 8, 2022), https://gizmodo.com/apple-iphone-analytics-tracking-even-when-off-app-store-1849757558.
[10] Mehak Agarwal, *'You should be in control of your data', says Apple CEO Tim Cook on privacy*, Business Today (May 19, 2022), https://www.businesstoday.in/technology/news/story/you-should-be-in-control-of-your-data-says-apple-ceo-tim-cook-on-privacy-334194-2022-05-19.
[11] *If an app asks to track your activity*, Apple (May 10, 2022), https://support.apple.com/en-us/HT212025.
[12] *Id.*
[13] *Device Analytics & Privacy*, Apple (Dec. 12, 2022), https://www.apple.com/legal/privacy/data/en/device-analytics/.

24. Based on these representations, mobile device users reviewing Apple's privacy settings would reasonably believe that by turning off "Share [Device] Analytics" and/or "Allow Apps to Request to Track," Apple would not track mobile device users' User Data.

**B.  Apple Secretly Collects its Mobile Device Users' User Data.**

25. Unbeknownst to Plaintiff and Class members, and despite Apple's purported commitment to its mobile device users' privacy, however, Apple secretly tracks and collects a wide range of User Data, even when mobile device users have turned off "Share [Device] Analytics" and/or "Allow Apps to Request to Track" in their mobile device's privacy settings, an apparent and direct contradiction of Apple's privacy promises.

26. A recent study from two app developers and security researchers at the software company Mysk found that mobile device users' privacy settings had no effect on Apple's data collection when using a number of Apple apps—the App Store, Apple Music, Apple TV, Books, and Stocks—as Apple's tracking remained the same whether or not the privacy settings were turned on or off.[14]

27. For example, Mysk discovered that the App Store harvests information about every single thing mobile device users do in real time in the app, including what was tapped on, which apps were searched for, what ads were displayed, how long an app was viewed, and how the app was found.[15] Moreover, the App Store collected details about a user's mobile device as well, including ID numbers, what kind of device was used, the device's screen resolution, the device's keyboard language, and how the user was connected to the internet.[16]

28. "This data can be sensitive, especially when you consider that merely searching for apps related to topics such as religion, LGBTQ issues, health and addiction can reveal details about a person's life."[17]

---

[14] Germain, *supra* note 9.
[15] *Id.*
[16] *Id.*
[17] Thomas Germain, *Apple Sued for Allegedly Deceiving users With Privacy Settings After Gizmodo Story*, Gizmodo (Nov. 11, 2022), https://gizmodo.com/apple-iphone-privacy-analytics-class-action-suit-1849774313.

5
CLASS ACTION COMPLAINT

29. Further, the Mysk study revealed that the Stocks app collected a mobile device user's list of watched stocks, the names of stocks viewed and searched for and time stamps when that occurred, as well as record of a news articles a mobile device user saw in the Stocks app.

30. Most concerning, however, the Mysk study discovered that in addition to tracking and collecting wide swaths of User Data from device users who interact with Apple apps, Apple collects a "Directory Services Identifier" that is tied to a mobile device user's iCloud account, linking their name, email address, and more to the harvested User Data.[18]

31. As such, Apple tracks and collects detailed information about mobile device users while they use Apple apps; Apple collects this information in contradiction of its own privacy promises; and the tracked and collected User data is directly linked to a mobile device user.[19] Put differently, "[w]hat happens on your iPhone stays on your iPhone, unless you count the mountains of information your iPhone sends to Apple."[20]

32. Apple's apps are an electronic, mechanical, or other analogous device for purposes of the Act in that they track and collect the content of electronic computer-to-computer communications between Plaintiff's and Class members' mobile devices and the computer servers and hardware utilized by Apple to operate its apps.

33. Alternatively, even if the apps themselves were not a device for purposes of the Act, the apps' software is designed to alter the operation of a mobile device by instructing the hardware components of that physical device to run the processes that ultimately intercept the mobile device user's communications and transmit them to Apple without the device user's knowledge.

34. The User Data intentionally tracked and collected by Apple was content generated through Plaintiff's and Class members' use, interaction, and communication with Apple's apps relating to the substance and/or meaning of Plaintiff's and Class members' communications with the apps. This information is "content" as defined by the Act and is not merely record information regarding the characteristics of the message that is generated in the course of the communication. The mere fact that

---

[18] Mitchel Clark, *iOS developers say Apple's App Store analytics aren't anonymous*, The Verge (Nov. 21, 2022), https://www.theverge.com/2022/11/21/23471827/apple-app-store-data-collection-analytics-personal-info-privacy.
[19] *Id.*
[20] Germain, *supra* note 9.

Apple values this content, and tracks and collects it, confirms these communications are content that convey substance and meaning to Apple.

**C.      Plaintiff's and Class Members' Experiences.**

35.     Plaintiff is an iPhone user and shortly after acquiring her mobile device, Plaintiff turned off the "Allow Apps to Request to Track" and the "Share [Device] Analytics" options, reasonably expecting that Apple would honor its privacy promises and not collect or track her User Data while using Apple apps.

36.     Plaintiff has used various Apple apps on her iPhone while in California prior to the filing of this action.

37.     While using various Apple apps, Plaintiff fell victim to Apple's unlawful collection and tracking of her User Data as she interacted with the apps without her consent.

38.     Unbeknownst to Plaintiff, Apple did not honor its privacy promises, and secretly collected and tracked her User Data as she interacted with Apple apps on her iPhone.

39.     Like Plaintiff, each Class member is an Apple mobile device user who turned off the "Allow Apps to Request to Track" and/or the "Share [Device] Analytics" options, reasonably expecting that Apple would honor its privacy promises and not collect or track their User Data while using Apple apps.

40.     And like Plaintiff, each Class member interacted with Apple apps on their mobile device, and each had their User Data tracked and collected by Apple without their consent.

**D.      Plaintiff and Class Members Have a Reasonable Expectation of Privacy in Their User Data.**

41.     Plaintiff and Class members have a reasonable expectation of privacy in their User Data.

42.     Consumers are skeptical and wary about their data being collected. A report released by KPMG shows that "a full 86% of the respondents said they feel a growing concern about data privacy, while 78% expressed fears about the amount of data being collected."[21]

---

[21] Lance Whitney, *Data privacy is a growing concern for more consumers*, TechRepublic (Aug. 17, 2021), https://www.techrepublic.com/article/data-privacy-is-a-growing-concern-for-more-consumers/.

43. Privacy polls and studies show that a majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares its customers' data.

44. A recent study by Consumer Reports shows that 92% of Americans believe that internet companies and websites should be required to obtain consent before selling or sharing consumers' data, and the same percentage believe internet companies and websites should be required to provide consumers with a complete list of the data that has been collected about them.[22]

45. Moreover, according to a study by Pew Research Center, a majority of Americans, approximately 79%, are concerned about how data is collected about them by businesses.[23]

46. Apple mobile device users act consistently with their expectation of privacy. Following a new rollout of the iOS operating software—which introduced App Tracking Transparency, purportedly asking users for clear, affirmative consent before allowing app developers to track users through third-party apps and websites—85 percent of worldwide Apple mobile device users and 94 percent of U.S. Apple mobile device users chose not to allow such tracking.[24]

E. **Plaintiff and Class Members Did Not Consent to Apple's Conduct.**

47. Apple represents that that it will not collect mobile device users' User Data when they turn off "Allow Apps to Request to Track" and/or "Share [Device] Analytics" in their devices' privacy settings and in turn, 85 percent of worldwide Apple users and 94 percent of U.S. Apple users chose not to allow such tracking.

48. Against this backdrop, Plaintiff and Class members did not consent to Apple's collection of their User Data because they turned off "Allow Apps to Request to Track" and/or "Share [Device] Analytics" in their mobile devices' privacy settings.

---

[22] *Consumers Less Confident About Healthcare, Data Privacy, and Car Safety, New Survey Finds*, Consumer Reports (May 11, 2017), https://www.consumerreports.org/consumerreports/consumers-less-confident-about-healthcare-data-privacy-and-car-safety/.
[23] *Americans and Privacy: Concerned, Confused, and Feeling Lack of Control Over Their Personal Information*, Pew Research Center, (Nov. 15, 2019), https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-Confusedand-feeling-lack-of-control-over-their-personal-information/.
[24] Margaret Taylor, *How Apple screwed Facebook*, Wired, (May 19, 2021), https://www.wired.co.uk/article/apple-ios14-facebook.

**F.      Plaintiff's and Class Members' User Data Has Immense Economic Value to Apple.**

49.     Apple tracks Plaintiff's and Class members' User Data because Apple is working to build its own advertising empire center around the world's most valuable resource—data.[25] As the *Economist* has analogized, a user's personal data is the "oil field of the digital era."[26]

50.     Indeed, last year Apple announced that it would start running more ads in the App Store, placing ads in the "Today tab," the first page a mobile device user sees when they open the App Store.[27] Apple also reportedly has plans to add ads to Apple TV, indicating that Apple is in the process of developing new data-driven business ventures.[28]

51.     Moreover, it is common knowledge that there is an economic market for consumers' personal data—including the User Data that Apple collects from Plaintiff and Class Mmembers.

52.     In a consumer-driven world, the ability to capture and use customer data to shape products, solutions, and the buying experience is critically important to a business's success. Research shows that organizations who "leverage customer behavior insights outperform peers by 85 percent in sales growth and more than 25 percent in gross margin."[29]

53.     In 2013, the Organization for Economic Cooperation and Development ("OECD") even published a paper entitled "Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value."[30] In this paper, the OECD measured prices demanded by companies concerning user data derived from "various online data warehouses."[31]

54.     OECD indicated that "[a]t the time of writing, the following elements of personal data were available for various prices: USD 0.50 cents for an address, USD 2 [i.e. $2] for a date of birth, USD 8 for

---

[25] *The world's most valuable resource is no longer oil, but data*, The Economist (May 6, 2017), https://www.economist.com/leaders/2017/05/06/the-worlds-most-valuable-resource-is-no-longeroil-but-data.
[26] *Id.*
[27] Thomas Germain, *Apple Is Sneaking More Ads Onto Your Phone*, Gizmodo (Oct. 24, 2022), https://gizmodo.com/apple-app-store-ads-today-tab-homepage-1849694826.
[28] Kyle Barr, *Apple's Thinking Hard About Ads for Apple TV+ Content*, Gizmodo (Oct. 12, 2022), https://gizmodo.com/apple-appletv-mlb-1849647294.
[29] Brad Brown, Kumar Kanagasabai, Prashant Pant, & Goncalo Serpa Pinto, *Capturing value from your customer data*, McKinsey (Mar. 15, 2017), https://www.mckinsey.com/business-functions/quantumblack/our-insights/capturing-value-from-your-customer-data.
[30] *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD Digital Economy Papers, NO. 220 (Apr. 2, 2013), https://www.oecdilibrary.org/docserver/5k486qtxldmq-en.pdf.
[31] *Id.* at 25.

a social security number (government ID number), USD 3 for a driver's license number and USD 35 for a military record. A combination of address, date of birth, social security number, credit record and military is estimated to cost USD 55."[32]

55. Furthermore, companies themselves have valued individuals' personal data in real-world dollars.

56. For instance, Meta Platforms f/k/a Facebook has offered to pay individuals for their voice recordings[33] and has paid teenagers and adults up to $20 per month plus referral fees to install an app that allows Meta to collect data on how individuals use their smartphones.[34]

57. Numerous other companies and apps such as Nielsen Data, Killi, DataCoup, and AppOptix offer consumers money in exchange for their personal data.[35]

58. Given the monetary value that companies have already paid for personal information in the past, Defendant has deprived Plaintiff and Class members of the economic value of their User Data without providing proper consideration for their property.

**TOLLING**

59. The statutes of limitations applicable to Plaintiff's and Class members' claims were tolled by Defendant's conduct and Plaintiff's and Class members' delayed discovery of their claims.

60. As alleged above, Plaintiff and Class members did not know and could not have known with due diligence that Apple was tracking their User Data when they interacted with Apple apps on their mobile devices because they had adjusted their mobile devices' privacy settings to turn off "Allow Apps to Request to Track" and "Share [Device] Analytics" and Apple represented that it would not be tracking their User Data.

---

[32] *Id.*
[33] Jay Peters, *Facebook will now pay you for your voice recordings*, The Verge (Feb. 20, 2020), https://www.theverge.com/2020/2/20/21145584/facebook-pay-record-voice-speech-recognition-viewpoints-prounciations-app.
[34] Saheli Roy Choudhury & Ryan Browne, *Facebook pays teens to install an app that could collect all kinds of data*, CNBC (Jan. 29, 2019), https://www.cnbc.com/2019/01/29/facebook-paying-users-to-install-app-to-collect-data-techcrunch.html.
[35] *26 Apps That Pay You For Data Collection: Earn a Passive Income*, Dollar Break (Dec. 2, 2022), https://www.dollarbreak.com/apps-that-pay-you-for-data-collection/.

61. Plaintiff and Class members could not with due diligence have discovered the full scope of Defendant's conduct, especially where Apple promised it was not collecting or tracking their User Data.

62. The earliest Plaintiff and Class members, acting with due diligence, could have reasonably discovered Apple's conduct would have on or about November 8, 2022, following the release of the Mysk investigation.

## CLASS ACTION ALLEGATIONS

63. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 individually and on behalf of the following class:

> All natural persons who, while using their mobile Apple device, had their User Data tracked and/or collected by Apple, even though they had their "Allow Apps to Request to Track," "Share iPhone Analytics," "Share iPhone & Watch Analytics," and/or "Share iPad Analytics," turned off (the "Class").

64. Excluded from the Class is Defendant, its parents, subsidiaries, affiliates, officers, and directors, all persons who make a timely election to be excluded from the Class, the judge to whom this case is assigned and any immediate family members thereof, and the attorneys who enter their appearance in this action.

65. **Numerosity:** The members of the Class are so numerous that individual joinder of all Class members is impracticable. The precise number of Class members and their identities may be obtained from the books and records of Apple.

66. **Commonality:** This action involves questions of law and fact that are common to the Class members. Such common questions include, but are not limited to: (a) whether Apple intentionally intercepts the User Data of its mobile device users; (b) whether Defendant acquires the contents of mobile device users' User Data without their consent; (c) whether Defendant's conduct violates state privacy and anti-wiretapping laws; (d) whether Plaintiff and the Class members are entitled to equitable relief; and (e) whether Plaintiff and the Class members are entitled to actual, statutory, punitive, or other forms of damages, and other monetary relief.

67. **Typicality:** Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through the uniform prohibited conduct

described above. For instance, Plaintiff and each member of the Class had their User Data tracked and collected in violation of the law and their right to privacy. This uniform injury and the legal theories that underpin recovery make the claims of Plaintiff and the members of the Class typical of one another.

68. **Adequacy of Representation:** Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex litigation and class actions, including litigation to remedy privacy violations. Plaintiff has no interest that is antagonistic to the interests of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so. Neither Plaintiff nor her counsel have any interest adverse to the interests of the other members of the Class.

69. **Superiority:** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

70. **Predominance:** Common questions of law and fact predominate over any questions affecting only individual Class members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendant's liability and the fact of damages is common to Plaintiff and each member of the Class. If Defendant intercepted Plaintiff's and Class members' User Data, then Plaintiff and each Class member suffered damages by that conduct.

71. **Ascertainability:** Members of the Class are ascertainable. Class membership is defined using objective criteria and Class members may be readily identified through Apple's books and records.

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT ("CIPA")**
California Penal Code § 632

72. Plaintiff incorporates the above allegations by reference as if fully set forth herein.

73. Plaintiff brings this count individually and on behalf of the Class.

74. CIPA § 632(a) prohibits the use of an electronic amplifying or recording device to eavesdrop upon or record the confidential communications of others, whether in person or by means of telegraph, telephone, or other device (except radio), without the consent of all parties to the communication.

75. At all relevant times, Apple's tracking and recoding of Plaintiff's and the proposed Class's communications while using an app with "Allow Apps to Request to Track" and/or "Share [Device] Analytics" turned off was without authorization and consent.

76. Apple's mobile applications constitute an "amplifying or recording device" under CIPA.

77. Plaintiff and the proposed Class have suffered losses by reason of these violations, including, but not limited to, violations of their rights to privacy and loss of value in their personal identifiable information.

78. Pursuant to California Penal Code § 637.2, Plaintiff and the proposed Class have been injured by the violations of the California Penal Code § 632, and seek damages for the greater of $5,000 or three times the amount of actual damages.

79. Plaintiff further requests, as provided under CIPA, reasonable attorneys' fees and costs of suit, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury sufficient to prevent or deter the same or similar conduct by Defendant.

80. Apple maintains its principal place of business in California, and designed, contrived, and effectuated its scheme to track and record confidential communications while its users were browsing apps from their Apple devices. Apple has adopted California substantive law to govern its relationship with its users.

## SECOND CLAIM FOR RELIEF
## INVASION OF PRIVACY

81. Plaintiff incorporates the above allegations by reference as if fully set forth herein and brings this count individually and on behalf of the Class.

82. California's constitution contains a right to privacy that creates a right of action against private entities such as Defendant. The principal purpose behind California's constitutional right to privacy was to protect against unnecessary information gathering, use, and dissemination by entities such as Defendant.

83. As described herein, Defendant has intruded upon the legally protected privacy interests of Plaintiff the proposed Class, including at least the following:

    (a)    The privacy interests created by CIPA;

    (b)    The California Constitution, which guarantees its citizens the right to privacy;

    (c)    The Fourth Amendment right to privacy concerning personal computing devices, including web-browsing histories, as recognized by the United States Supreme Court; and

    (d)    Apple's Privacy Policy and related policies referenced therein, and other public promises Defendant made regarding its commitment to protecting users' privacy generally and its promises not to track/record users' communications while "Allow Apps to Request to Track" and/or "Share [Device] Analytics" were turned off.

84. Plaintiff and the proposed Class had a reasonable expectation of privacy under the circumstances in that: (a) Defendant affirmatively promised its users it would not track their communications or access their computing devices while they were using an app while "Allow Apps to Request to Track" and/or "Share [Device] Analytics" were turned off; and (b) they could not have reasonably expected that Defendant would commit acts in violation of state civil and criminal laws.

85. Defendant's actions constitute a serious invasion of privacy in that they: (a) invaded a zone of privacy protected by the Fourth Amendment (*i.e.*, the right to privacy in data contained on personal computing devices, including user data, browsing histories, and app activity); (b) violated state privacy laws concerning wiretapping and invasion of privacy, including CIPA; (c) constituted the unauthorized taking of valuable personal information, through deceit, of millions of Americans without their consent; and (d) invaded the privacy rights of millions of Americans without their consent.

86. Committing criminal acts against millions of Americans constitutes an egregious breach of social norms that is highly offensive to a reasonable person. These acts are particularly egregious and offensive insofar as Defendant's surreptitious and unauthorized tracking of internet communications involves the personally identifiable information of individuals who took active measures—recommended by Defendant itself—to ensure their privacy.

87. Defendant lacked a legitimate business interest in tracking its users while using an app, without their consent, while "Allow Apps to Request to Track" and/or "Share [Device] Analytics" were turned off.

88. Defendant's conduct has needlessly harmed Plaintiff and the proposed Class by capturing intimately personal facts and data in the form of their User Data. This disclosure and loss of privacy and confidentiality has caused Plaintiff and the proposed Class to experience mental anguish, emotional distress, worry, fear, and other harms.

89. Additionally, given the monetary value of individual personal information, Defendant deprived Plaintiff and the proposed Class of the economic value of their interactions with Defendant's apps, without providing proper consideration.

90. Plaintiff and the proposed Class have thus been damaged by Defendant's invasion of their privacy and are entitled to just compensation and injunctive relief.

91. Plaintiff and the proposed Class have suffered an injury in fact, resulting in the loss of money and/or property, as a proximate result of the wrongful conduct and violations of law alleged herein.

92. Defendant's conduct is ongoing, and it continues to unlawfully intercept the communications of Plaintiff and the proposed Class without their consent anything they interact with an Apple app on their mobile device. Therefore, Plaintiff and the proposed Class are entitled to declaratory and injunctive relief to prevent future interceptions of their communications by Defendant.

**THIRD CLAIM FOR RELIEF**
**UNJUST ENRICHMENT (QUASI-CONTRACT CLAIM FOR RESTITUTION AND DISGORGEMENT) OR, ALTERNATIVELY, BREACH OF CONTRACT**

93. Plaintiff incorporates the above allegations by reference as if fully set forth herein and brings this count individually and on behalf of the Class.

94. Plaintiff and the proposed Class unwittingly conferred benefits on Defendant as a result of Defendant's intentional receipt of their personal and confidential information, despite representing that Defendant would not collect such information if the "Allow Apps to Request to Track" and/or "Share [Device] Analytics" settings were turned off.

95.   Defendant has been enriched when it obtained Plaintiff's and the proposed Class's personal and confidential information without consent for its own financial advantage (*i.e.*, to develop, maintain, and improve Apple's services, measure Apple's performance, or otherwise to create operational efficiencies and be more competitive). As a result, Defendant enjoyed increased profits while Plaintiff and the proposed Class received nothing in return.

96.   Under these circumstances, equity and good conscience militate against permitting Defendant to retain the profits and benefits from its wrongful conduct. Such profits and benefits should accordingly be disgorged or placed in a constructive trust so that Plaintiff and the proposed Class can obtain restitution.

97.   Plaintiff and the proposed Class lack an adequate remedy at law to address the unfair conduct alleged herein. Legal remedies available to Plaintiff and the proposed Class are inadequate because they are not equally certain and prompt as equitable relief. Damages are not equally certain as restitution insofar as the Court may award restitution even if it determines that insufficient evidence is provided to support an award of damages.

98.   Alternatively, to the extent Defendant successfully asserts that its Terms of Service form a binding contract that sufficiently defines the parties' rights regarding Defendant's use of Plaintiff's and the proposed Class's personal and confidential information (thereby rendering a claim for unjust enrichment unavailable), Plaintiff alleges that Defendant's conduct as described herein constitutes a breach of any such binding contract. For example, Defendant's Terms of Service incorporate its Privacy Policies which, in turn, promise that "Apple requires app developers to ask for permission before they track your activity." Defendant breaches this contract by secretly allowing Defendant to track user activity without permission.

**PRAYER FOR RELIEF**

99.   WHEREFORE, Plaintiff, on behalf of herself and the Class defined herein, respectfully requests that this Court:

A.   Certify this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and appoint Plaintiff and Plaintiff's attorneys to represent the Class;

B.   Declare that Apple's conduct violates the laws referenced herein;

|   |   |
|---|---|
| 1 | C. Award compensatory damages, including statutory damages where available, |
| 2 | and/or restitution to Plaintiff and the Class against Apple in an amount to be proven at trial, including |
| 3 | interest thereon; |
| 4 | D. Permanently restrain Apple, and its officers, agents, servants, employees and |
| 5 | attorneys, from engaging in the misconduct alleged herein; |
| 6 | E. Award Plaintiff and the Class their reasonable costs and expenses incurred in this |
| 7 | action, including counsel fees and expert fees; and |
| 8 | F. Grant such other and further relief as the Court deems appropriate. |

## DEMAND FOR JURY TRIAL

100. Plaintiff hereby demands a trial by jury for all claims so triable.

Respectfully submitted,

Dated: February 10, 2023

**LYNCH CARPENTER, LLP**

By: */s/ Todd D. Carpenter*
Todd D. Carpenter (SBN 234464)
todd@lcllp.com
1350 Columbia St., Ste. 603
San Diego, California 92101
Tel.: (619) 762-1900
Fax: (619) 756-6991

Jonathan M. Jagher*
**FREED KANNER LONDON
& MILLEN LLC**
923 Fayette Street
Conshohocken, Pennsylvania 19428
Tel.: (610) 234-6486
jjagher@fklmlaw.com

Robert J. Wozniak*
Matthew W. Ruan (SBN 264409)
**FREED KANNER LONDON
& MILLEN LLC**
2201 Waukegan Road, Suite 130
Bannockburn, IL
Tel.: (224) 632-4507
rwozniak@fklmlaw.com
mruan@fklmlaw.com

*Attorneys for Plaintiff*

*Pro Hac Vice Pending

17
CLASS ACTION COMPLAINT